# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## HELENA DIVISION

DEANDRE GREEN                                                          PLAINTIFF

v.                                          NO. 2:17CV00033 JLH

CHARLES BYRD, individually and in his
official capacity as a police officer of
the City of Helena-West Helena, Arkansas                              DEFENDANT

## OPINION AND ORDER

Deandre Green claims under 42 U.S.C. § 1983 that the City of Helena-West Helena,

Arkansas, violated his constitutional right to a prompt first appearance after his arrest. The City and

Green both move for summary judgment. For the reasons that will be explained, the City's motion

is granted and Green's motion is denied.

### I. Summary Judgment Standard

A court should grant summary judgment if the evidence demonstrates that there is no genuine

dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a

genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.

Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward

with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986);

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute

of material fact exists only if the evidence is sufficient to allow a reasonable jury to return a verdict

in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct.

2505, 2510, 91 L. Ed. 2d 202 (1986). The Court must view the evidence in the light most favorable

to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Id.*

## II. History of the Case

Charles Byrd, a Helena-West Helena police officer, arrested Green on Friday, June 28, 2013, shortly before 8:00 p.m. On the next day, a City officer swore an affidavit of probable cause and obtained an arrest warrant. Green was transported to the Ashley County jail. He did not receive a first appearance before Monday, July 1. The parties dispute whether he received a first appearance on Monday at all, but the City says that Judge Reid Harrod, an Ashley County District Court judge, presided over Green's first appearance on Monday. After several months, the charges were dismissed and Green was released.

Green sued Charles Byrd in his individual capacity and official capacity.[1] Helena-West Helena is located in Phillips County. Green also sued the Phillips County Sheriff in his official capacity. He claimed among other things that his constitutional right to a timely first appearance was violated.[2] Green also initially asserted a claim that he was arrested without probable cause. *See* Document #16 at 2-3. He has now abandoned that claim. The City argued and provided evidence that Helena-West Helena officers arrested Green based on probable cause, *see* Document #84 at 7-8, but

---

[1] A claim against a city official in his official capacity is equivalent to a claim against the city itself. *See, e.g.*, *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 800 (8th Cir. 1998).

[2] The Court previously dismissed most of the claims at Green's request. *See* Documents #33 and #37.

Green did not respond to that argument. Any probable-cause claim is therefore waived. *See Denson v. Steak 'n Shake, Inc.*, ___ F.3d ___, 2018 WL 6273586 at *1 n.2 (E.D. Mo. Dec. 3, 2018) ("Denson did not respond to Steak 'n Shake's arguments in support of summary judgment on the retaliation claim, and the district court correctly deemed the claim waived."). Remaining is Green's § 1983 claim that Charles Byrd, in his official capacity, violated Green's constitutional right to a timely first appearance.[3]

The City conceded for years that Green did not have a first appearance hearing. That concession was made not only in this case but also in a previous class action in which Green opted out of a class comprised in relevant part by "[a]ll those arrested in Phillips County, Arkansas between 9 October 2012 and 10 November 2016 who did not receive a Rule 8 appearance within seventy-two hours of arrest[.]" *See* Document #16 at 1; *Thomas v. Byrd*, 2:15-cv-00095-DPM, Document #54 (E.D. Ark. Nov. 10, 2016). In preparing for trial in this case, however, the City's lawyers uncovered, for the first time, in the Ashley County records, a "Record of First Judicial Appearance" for Green. *See* Documents #60 and #61. This document records that Green received a first appearance before Ashley County District Court Judge Reid Harrod on July 1, 2013. *See* Document #61-3. Both Judge Harrod's and Green's signatures appear on the document.

---

[3] Green's Amended Complaint claims he was deprived of his rights under Article II, Section 22 of the Arkansas Constitution, as permitted by the Arkansas Civil Rights Act. *See* Document #16 at 1. Article II, Section 22 of the Arkansas Constitution relates to takings without just compensation. Green also mentions that his arrest was without probable cause in violation of the Arkansas Constitution. *Id.* at 2. As noted above, Green has waived any probable-cause claim. Liberally construing Green's complaint, to the extent he claims under the Arkansas Civil Rights Act that his state constitutional rights were violated, those claims rise or fall with his § 1983 claim. *See* Ark. Code Ann. § 16-123-105(c) (providing that courts may look to decisions interpreting 42 U.S.C. § 1983 as persuasive authority).

### III. Cross Motions for Summary Judgment

The City contends, among other things, that the record shows that Green received a first appearance on Monday, July 1, 2013, within three days of his Friday evening arrest. Document #85 at ¶¶ 8-13. The City argues that, as a matter of law, the delay from Friday evening to Monday did not violate Green's rights. Green asserts that he did not receive a first appearance that Monday. He also contends that, even if he did have a first appearance, Judge Harrod had no jurisdiction to conduct it because Judge Harrod is an Ashley County District Court judge whereas Green was arrested and charged in Phillips County. Green argues, therefore, that the first appearance was void. Finally, Green maintains that the City should be estopped from now contending that he received a first appearance when it has previously conceded that he did not have one.

### A.    Whether Green's Affidavit Creates a Genuine Dispute of Fact as to Whether He Received a First Appearance

For purposes of his own motion for summary judgment, Green concedes he saw Judge Harrod in Ashley County. In response to the City's motion, however, he contends that even if jurisdiction existed, "there is still a genuine issue of material fact because the Plaintiff swears he did not see Judge Harrod," and he provides an affidavit to that effect. Documents #98 at 1-2 and #98-2.

As noted above, City police officers arrested Green on Friday, June 28, 2013, shortly before 8:00 p.m. Document #85-1. On the following day a City officer swore an affidavit of probable cause, which a judge signed. Document #85-2. Warrants for Green's arrest were issued. Document #85-3. On that same day—Saturday, June 29th—Green was transported to the Ashley County jail. Document #85-5. All of these facts are undisputed. *See* Document #99 at 3.

The City further says, and provides evidence, that on Monday, July 1, the City asked Judge Harrod to perform a first appearance for Green. Document #85-6. It made the request via a fax, date-

stamped July 1, 2013, sent from the Helena-West Helena Police Department to Judge Harrod. *Id.* Documents included in the fax are a June 29 probable cause affidavit and warrants for Green's arrest. *Id.* at 12-18. Also included is a blank "Record of First Judicial Appearance" for "Deandre Green." *Id.* at 10. The City further provides documentary evidence that Green was transported to court on Monday, July 1, around 7:00 a.m. Document #85-5 at 1. Finally, the City has produced a completed "Record of First Judicial Appearance" dated July 1, showing that Green received a first appearance that day. Document #85-7. This document states that "the above named Defendant did appear before" Judge Harrod, and names "Deandre Green" as the defendant. *Id.* Both Judge Harrod's and Green's signatures appear on the form. Judge Harrod attests that the signature is his and that the document reflects that Green received a first appearance before him on July 1, 2013. *Id.* at 2. Green does not dispute that the defendant's signature is his. The record also lists various information that Green was given, including his right to counsel; further, the name of a lawyer that Green "will retain" is handwritten on the form. *Id.* at 1.

Green's contrary proof consists of his affidavit in which he swears that he "did not receive a first appearance before a judge." Document #98-2. He does state, however, that he "recall[s] being presented with paperwork at the jail to sign." *Id.* He does not explain what paperwork he signed, nor does he state that he was confused about what he was signing.

The first issue is whether Green's affidavit creates a genuine dispute as to whether he received a first appearance before Judge Harrod on July 1.

"The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Cooper v. United States*, 233 F.2d 821, 824 (8th Cir. 1956) (quoting *United States v. Chem. Found. Inc.*, 272 U.S. 1, 14-15, 47 S. Ct. 1, 6, 71 L. Ed. 131 (1926)). As the Supreme Court

has stated, "[a]cts done by a public officer which presuppose the existence of other acts to make them legally operative, are presumptive proofs of the latter." *R.H. Stearns Co. of Boston, Mass. v. United States*, 291 U.S. 54, 63, 54 S. Ct. 325, 328, 78 L. Ed. 647 (1934) (citations and quotation omitted). Federal courts presume the accuracy of district court clerk docket entries, for example, absent reliable evidence to the contrary. *Arnold v. Wood*, 238 F.3d 992, 995 (8th Cir. 2001) (citing *MacNeil v. State Realty Co. of Boston, Inc.*, 229 F.2d 358, 359 (1st Cir. 1956) ("It may perhaps be that an erroneous entry . . . was made by the clerk of the court below. But we do not consider the affidavit of the appellant standing alone sufficient to outweigh the respect to be accorded in this court to the docket entries certified for appeal by the clerk of the District Court.")). Moreover, documents that merely call into question the validity of an official document are not "clear evidence" of its invalidity. *Riggs Nat. Corp. & Subsidiaries v. C.I.R.*, 295 F.3d 16, 21 (D.C. Cir. 2002); *see also Webster v. Estelle*, 505 F.2d 926, 929-930 (5th Cir. 1974) (holding that habeas petitioner's uncorroborated testimony that he had no counsel when he pleaded guilty did not overcome the presumption of regularity accorded to court documents showing that he was represented at the plea).

Here, as noted above, the City has provided documentary evidence that it asked Judge Harrod to conduct Green's first appearance on July 1, 2013; that it sent Green's arrest information to Judge Harrod; and that it transported Green to court. Most important, the July 1 "Record of First Judicial Appearance" for Green shows that he appeared before Judge Harrod on that day. Judge Harrod has sworn that his signature appears on the form. Green's signature appears on it as well. Although Green has not expressly admitted that he signed the form, he has not denied that he signed it. Nor does he say or provide any evidence that he was confused about what he was signing. The Court therefore takes as undisputed that Green signed the form. Thus, not only does Green's recent affidavit contradict a court record entitled to a presumption of regularity, it also contradicts Green's

6

own prior affirmation of that court record. *See Bonvillain v. Blackburn*, 780 F.2d 1248, 1251-52 (5th Cir. 1986) (holding no habeas relief warranted based on broken plea agreement; record showed petitioner knew 17-year sentence was for forcible rape conviction and sentence on parole revocation was unrelated, where both petitioner and his lawyer signed a form at the plea acknowledging that 17-year sentence was for forcible rape conviction).

It is true that an affidavit generally suffices to create an issue of material fact. Fed. R. Civ. P. 56(c)(1)(A). But not always. For example, if a person responding to a motion for summary judgment submits an affidavit that contradicts his earlier deposition testimony, unless the deposition testimony reflects confusion, the affidavit does not create a genuine dispute of material fact. *See Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1364-65 (8th Cir. 1983). To hold otherwise "would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* at 1365. Likewise, in *Conolly v. Clark*, the Eighth Circuit held that a plaintiff could not defeat summary judgment by his self-serving affidavit attempting to contradict the objective evidence. 457 F.3d 872, 876 (8th Cir. 2006). There, the parties were still negotiating a contract, as partly evinced by the plaintiff's email stating the agreement was "just preliminary and a more formal proposal will be forthcoming" *Id.* Despite the plaintiff's subsequent affidavit swearing that he meant the agreement terms were "preliminary" in the sense that a different document would ultimately memorialize the oral agreement—not that a final agreement had not been reached yet – summary judgment was appropriate. As the Eighth Circuit noted, "a properly supported motion for summary judgment is not defeated by self-serving affidavits." *Id.* (citing *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005)).

Under the circumstance here, where a court record that not only is presumed to be correct, but also is signed by the defendant, shows that the first appearance took place, that defendant cannot

create a genuine dispute of material fact merely by signing an affidavit contradicting his own signature. In the face of the objective evidence that the City has provided, and against the backdrop of the presumption of regularity accorded the court records, Green's affidavit does not create a genuine issue of fact.

## B.    Judge Harrod's Jurisdiction to Conduct First Appearance

Green vehemently argues that, even if he had a first appearance, Judge Harrod lacked jurisdiction to conduct it. He says that a district judge in Arkansas has no jurisdiction to conduct a first appearance for a defendant who was arrested in a separate county or separate judicial district.

Historically, that argument might have prevailed because Arkansas statutes directed[4] that a person who was arrested should be taken before a magistrate in the county where the offense was committed, except when he was arrested in a different county, in which case he was to be taken first to a magistrate in the county where he was arrested. Ark. Code Ann. §§ 16-85-201 to 203 (1987 repl.). These statutes were repealed more than thirteen years ago. Act 1994, § 502, 2005 Ark. Acts 6932, 7450-52.[5] Today, and at the times relevant to this case, the principal statute governing the jurisdiction of the Arkansas courts is Ark. Code Ann. § 16-88-101. That statute provides:

> (a) The jurisdiction of the various courts of this state for the trial of offenses shall be as follows:
>      (1) *The* Senate shall have exclusive jurisdiction of impeachment;
>      (2) *The* Supreme Court shall have general supervision and control over all inferior courts in criminal cases;

---

[4] Numerous Arkansas Supreme Court cases hold that this statute was directory and not mandatory. *Orr v. State*, 256 Ark. 547, 547-48, 508 S.W.2d 731, 732 (1974); *Crawford v. State*, 254 Ark. 253, 255, 492 S.W.2d 900, 901 (1973).

[5] A copy of the now-repealed statutes—Ark. Code. Ann. §§ 16-85-201 to 203—is appended to this Opinion for the convenience of the reader, along with the relevant portion of the Act that repealed them.

(3) *The* circuit court shall have original jurisdiction, exclusive of the district court, for the trial of offenses defined as felonies by state law and shall have original jurisdiction concurrent with the district court for the trial of offenses defined as misdemeanors by state law; and

(4) *The* district court shall have original jurisdiction, exclusive of the circuit court, for the trial of violations of ordinances of any town, city, or county within the territorial jurisdiction of the district court and shall have original jurisdiction concurrent with the circuit court for the trial of offenses defined as misdemeanors and violations by state law and committed within the territorial jurisdiction of the district court.

(b) Where an indictment is found in the circuit court for an offense within its jurisdiction, the circuit court shall have jurisdiction of all the degrees of the offense and of all the offenses included in the one (1) charge, although some of those degrees or included offenses are within the exclusive jurisdiction of the district court.

(c) *A* district court may issue arrest warrants and search warrants and may perform other pretrial functions, as authorized by the Arkansas Rules of Criminal Procedure, in the prosecution of a person for an offense within the exclusive jurisdiction of the circuit court.

(Emphases added.) Subsections (a) and (b) use the definite article "the" when designating the court that has jurisdiction over trials. In subsections (a)(3) and (a)(4), the use of the definite article limits trial jurisdiction to a specific court: "the circuit court" and "the district court." Subsection (c), in contrast, says that "a district court" can issue warrants and perform other pretrial functions for a person whose prosecution is within the exclusive jurisdiction of the circuit court, a reference back to subsection (a)(3). In this context, subsection (c)'s use of the indefinite article, in contrast to the other subsections, means that any district court may perform pretrial functions as authorized by the Arkansas Rules of Criminal Procedure.[6] *See Wagner v. State*, 2010 Ark. 389, 12-13, 368 S.W.3d

---

[6] Another statute provides for the territorial jurisdiction of the courts. In relevant part, that statute states that "[t]he local jurisdiction of district courts shall be of offenses committed within the limits of the jurisdiction of the courts, as prescribed by the statutes creating or regulating them." Ark. Code Ann. § 16-88-105(c). The Arkansas Supreme Court has explained that this statute, and its predecessor, relates to the court's jurisdiction to *try* criminal offenses. *See, e.g.*, *Wagner v. State*, 2010 Ark. 389, 16-17, 386 S.W.3d 914 (explaining that territorial jurisdiction "deals only with where the offense is to be tried, not with whether the state lacks the basic authority to apply its criminal law

914, 924-25 (explaining that a statute should be construed "just as it reads, giving the words their ordinary and usually accepted meaning in common language").

The relevant rule in the Arkansas Rules of Criminal Procedure provides that "[a]n arrested person who is not released by citation or by other lawful manner shall be taken before a judicial officer without unnecessary delay." Ark. R. Crim. P. 8.1. At that first appearance, "the judicial officer shall first determine by an informal, non-adversary hearing whether there is probable cause for detaining the arrested person pending further proceedings." Ark. R. Crim. P. 8.3(c). A "judicial officer" is "a person in whom is vested authority to preside over the trial of criminal cases." Ark. R. Crim. P. 1.6(c). The Arkansas Supreme Court has not decided whether "a judicial officer" in Rule 8.1 means only a judicial officer within the county or district with jurisdiction for trial, but that court has construed similar language to mean that any judicial officer may issue search warrants without regard to that officer's territorial jurisdiction for trials.

In *Brenk v. State*, the appellant contended that a search was invalid because a Marion County judge could not issue a warrant for a search in Baxter County. 311 Ark. 579, 589-90, 847 S.W.2d 1, 7 (1993). At the time the relevant statute provided that "[a] search warrant may be issued by any judicial officer of this state only upon affidavit sworn to before a judicial officer which establishes the grounds for its issuance." *Id.* (quoting Ark. Code Ann. § 16-82-201 (1987)). The Court pointed out that the statute specifically allows "any judicial officer" to issue a search warrant, and further explained that the statute gives no "indication that the jurisdiction of a judicial officer in issuing search warrants is limited to the county in which the judicial officer was elected or appointed." *Id.*

---

to the events in question," and holding that a district judge's jurisdiction to issue search warrants is unaffected by his or her territorial jurisdiction).

at 590, 847 S.W.2d at 7. Thus, the search warrant issued by the Marion County judge was valid for the Baxter County search. *Id.*

Likewise, in *Wagner v. State*, the issue was whether a judge in the Osceola District of Mississippi County could issue a search warrant for a residence in the Chickasawba District of Mississippi County. 2010 Ark. 389, 368 S.W.3d 914. The court relied in part on the same state statute in *Brenk* providing that a search warrant could be issued by "any judicial officer." *Id.* at 16, 368 S.W.3d at 926. The court also noted that Amendment 80 to the Arkansas Constitution – post-dating *Brenk* – authorized the General Assembly to establish jurisdiction of the courts, and that its passage did not affect the *Brenk* holding. *Id.* at 14, 368 S.W.3d at 925 (citing Ark. Const. Amendment 80, § 10). The General Assembly has established that district courts may issue search warrants "as authorized by the Rules of Criminal Procedure." *Id.* at 17, 368 S.W.3d at 926 (citing Ark. Code. Ann. § 16-88-101(c)). In turn, the relevant Rule of Criminal Procedure authorizes "a judicial officer" to issue a search warrant. *Id.* (citing Ark. R. Crim. P. 13.1). Any restriction on a district judge's territorial jurisdiction—that is, where an offense must be tried—has no bearing on his authority to issue search warrants pursuant to the Arkansas Rules of Criminal Procedure. *Id.* at 17, 368 S.W.3d at 927.

Finally, under circumstances similar to the ones here, a Crittenden County deputy sheriff arrested Logan in St. Francis County and took him back to Crittenden County where the crime had allegedly occurred. *Logan v. State*, 264 Ark. 920, 921, 576 S.W.2d 203, 204 (1979). Regardless of whether the warrantless arrest was made in fresh pursuit of Logan, the arrest was valid under state law because a St. Francis County deputy sheriff was also present for and participated in the arrest. *Id.* at 922, 576 S.W.2d at 205. Furthermore, there was no requirement that Logan be taken before a St. Francis County magistrate for his first appearance because the arrest was legal without regard

to fresh pursuit. *Id.* at 923, 576 S.W.2d at 205. If the arrest *had* been in fresh pursuit, the officers would have had to take Logan before a St. Francis County magistrate. *Id.* (citing Ark. Code Ann. § 16-81-302 ("if the arrest is without a warrant, the prisoner shall without unnecessary delay be taken before a judge or magistrate *of the county wherein such an arrest was made*") (emphasis added)). The Supreme Court noted that in contrast, for a valid warrantless arrest regardless of fresh pursuit, "Rule 8.1 merely requires that an arrested person be taken before *a judicial officer* without unnecessary delay." *Id.* (emphasis added).

As the *Wagner* court recognized, the Arkansas General Assembly has concluded that district courts "may [perform other pretrial functions], as authorized by the Arkansas Rules of Criminal Procedure." Ark. Code. Ann. § 16-88-101(c). Rules 8.1 and 1.6 of the Arkansas Rules of Criminal Procedure require an arrestee to be brought before a judicial officer, defined as a person who has been vested with authority to preside over the trial of criminal cases. The General Assembly has vested district courts with the authority to preside over the trial of criminal cases. *See id.* § 16-88-101(a)(4). Thus, *Wagner* indicates a district judge may conduct a first appearance pursuant to the Arkansas Rules of Criminal Procedure and is not limited by his or her territorial jurisdiction. *Logan* likewise supports the conclusion that the first appearance can properly occur before a judge in a different county from the county of arrest.

Based on the plain language of Rules 8.1 and 1.6, the plain language of § 16-88-101, the Arkansas cases interpreting parallel provisions governing the issuance of search warrants, and the repeal of §§ 16-88-201 through 203, an Arkansas district court judge is "a judicial officer" who may conduct the arrestee's first appearance even if the arrestee was arrested and charged in a different county. That Green's first appearance was conducted in Ashley County rather than Phillips County did not invalidate that first appearance.

12

### C.    Estoppel

In his final argument, Green argues that the City should be estopped from changing its earlier position that he did not receive a first appearance. *See* Document #98 at 6-8. Judicial estoppel is an equitable remedy that prevents a party from changing positions in a legal proceeding simply because his interests have changed. *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 1814, 139 L. Ed. 2d 968 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S. Ct. 555, 39 L. Ed. 578 (1895)). This rule "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id.* (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000)). Its primary purpose is "to protect the integrity of the judicial process." *Id.* at 749-50, 121 S. Ct. at 1814-15. As such, the court may invoke the doctrine at its discretion. *Id.*

Here, the City did not change positions because its interests had changed; rather, it discovered new evidence—evidence that had been in the control of Ashley County, not the City. Documents #60 and #61. It was no advantage to the City to wait until this late stage to reveal these records. The City has not intentionally contradicted itself, deliberately changed positions according to the needs of the moment, or played "fast and loose with the courts" – all ways the Supreme Court has described the actions of a party against whom judicial estoppel may apply. *See New Hampshire*, 532 U.S. at 750-51, 121 S. Ct. at 1814-15.

Green also invokes the doctrine of equitable estoppel, citing *King v. Powell*, 85 Ark. App. 212, 224, 148 S.W.3d 792, 799-800. That doctrine has no application here.

## IV. No Constitutional Violation

Having concluded that there is not a genuine issue of material fact—Green received a first appearance which was valid under Arkansas law—the Court must determine whether the delay between his arrest and his first appearance violated Green's constitutional rights.

One critical issue, which the parties have not directly addressed, remains. The City says Green was arrested pursuant to a warrant. Document #84 at 4. The City therefore cites to cases applying the Fourteenth Amendment's due process clause to detentions following an arrest by warrant. *Hayes v. Faulkner Cnty., Ark.*, 388 F.3d 669, 673 (8th Cir. 2004). ("[T]he Due Process Clause forbids an extended detention, without a first appearance, following arrest by warrant."). In its brief, the City says "the record demonstrates that the Helena-West Helena officers that detained Green, did so with probable cause and ultimately obtained an arrest warrant based on that probable cause." Document #84 at 7. It also argues that "arrest warrants were issued for the Plaintiff following a probable cause hearing, thus, this claim is properly analyzed under the Fourteenth Amendment." Document #107 at 9.

Green, on the other hand, does not argue his pre-first appearance detention was unconstitutionally long. Instead, he hangs his hat on his contention that Judge Harrod did not have jurisdiction and so he did not receive a first appearance *at all*. In the context of his jurisdictional argument, though, Green cites to cases discussing the Fourth Amendment right to a prompt judicial determination of probable cause following an arrest *without* a warrant. *See, e.g.*, Document #95 at 3.

As noted above, the undisputed facts show that Green was first arrested on Friday, June 28. Document #85-1. On the next day—Saturday, June 29—a City officer swore a probable cause affidavit, and obtained an arrest warrant. Documents #85-2 and #85-3. Nothing in the record shows

why an arrest warrant was issued the day after Green was arrested. In any event, Green was arrested without a warrant but a warrant was issued the day after his arrest.

The Supreme Court held in *Gerstein v. Pugh* that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint on liberty following arrest." 420 U.S. 103, 114, 95 S. Ct. 854, 863, 43 L. Ed. 2d 54 (1975).[7] It is not essential that he receive "the full panoply of adversary safeguards—counsel, confrontation, cross-examination, and compulsory process for witnesses." *Id.* at 119, 95 S. Ct. at 866. Instead, "[t]he sole issue is whether there is probable cause for detaining the arrested person pending further proceedings." *Id.* at 120, 95 S. Ct. at 866. An adversary hearing is unnecessary because "[t]he standard is the same as that for arrest." *Id.* Indeed, the determination of whether probable cause exists "traditionally has been decided by a magistrate in a nonadversary proceeding on hearsay and written testimony, and the Court has approved these informal modes of proof." *Id.* This identical "determination must be made by a judicial officer either before or promptly after arrest." *Id.* at 125, 95 S. Ct. at 869.

In *McLaughlin*, the Supreme Court defined "promptly" in this context. *McLaughlin*, 500 U.S. at 55, 111 S. Ct. at 1669. "[J]udicial determinations of probable cause within 48 hours of arrest will, as a general matter," comply with *Gerstein*, although a defendant can rebut this presumption by proving that the determination was "delayed unreasonably." *Id.* at 56, 111 S. Ct. at 1670. Conversely, if a probable cause determination occurs after forty-eight hours, "the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *Id.* at

---

[7] Although the record in *Gerstein* did not show whether the arrests occurred with or without a warrant, later Supreme Court cases have indicated *Gerstein*'s holding applies to warrantless arrests. *E.g., Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 53, 111 S. Ct. 1661, 1668, 114 L. Ed. 2d 49 (1991) ("persons arrested without a warrant must promptly be brought before a neutral magistrate for a judicial determination of probable cause").

57, 111 S. Ct. at 1670. The Court pronounced that intervening weekends do not qualify as an extraordinary circumstance. *Id.*

Since Green was arrested on the evening of Friday, June 28, and did not come before a judicial officer until Monday, July 1, more than forty-eight hours passed between his arrest and that in-person hearing. On Saturday, June 29, however, a judge did determine that probable cause supported Green's arrest.

The *Gerstein* Court did not hold that the arrestee must be taken in person before the judicial officer. In supporting its conclusion that a probable cause determination must occur after a warrantless arrest, however, the Court explained that "[a]t common law it was customary, if not obligatory, for an arrested person to be brought before a justice of the peace shortly after arrest." *Gerstein*, 420 U.S. at 114, 95 S. Ct. at 863. The Court has cited *Gerstein* in dicta for the proposition that "persons arrested without a warrant must promptly be *brought before* a neutral magistrate for a judicial determination of probable cause." *McLaughlin*, 500 U.S. at 53, 111 S. Ct. at 1668 (emphasis added) (citing *Gerstein*, 420 U.S. at 114, 95 S. Ct. at 863); *see also Manuel v. City of Joliet, Ill.*, ___ U.S.___, 137 S. Ct. 911, 915, 197 L. Ed. 2d 312 (2017) ("Manuel was brought before a county court judge later that day for a determination of whether there was probable cause for the charge, as necessary for further detention.") (citing *Gerstein*); *Maryland v. Shatzer*, 559 U.S. 98, 110, 130 S. Ct. 1213, 1223, 175 L. Ed. 2d 1045 (2010) ("a person arrested without a warrant [must] be brought before a magistrate to establish probable cause for continued detention") (citing *Gerstein*).

The Fourth Amendment does not require a suspect to be present for the probable cause determination when that determination is made in the context of an application for a warrant. At the time of arrest by warrant a judicial officer has necessarily already found probable cause outside of the arrestee's presence. The probable cause determination relies on the same standard whether it

16

occurs before or after the arrest. *Gerstein*, 420 U.S. at 119, 95 S. Ct. at 866. The Court has not found a case holding that a probable cause determination must occur in the defendant's presence or that the Fourth Amendment mandates that he be *brought before* a judicial officer after a warrantless arrest. Indeed, some jurisdictions expressly allow an arrestee to be absent from a post-arrest probable cause determination. "Even in jurisdictions in which preliminary hearings are regularly held, the magistrate will make a separate *Gerstein* determination of probable cause, usually at or just before the first appearance, which will be held for many jurisdictions within 24 hours of arrest." 4 Criminal Procedure § 14.2(a), Wayne R. LaFave, Jerold H. Israel, Nancy J. King, & Orin S. Kerr (4th ed. 2018 update) (citing N.M. Dist. Ct. R. Crim. P. 5-301) (providing for a probable cause determination following warrantless arrest, which "may be held in the absence of the defendant"). Whether an arrest occurs with or without a warrant, "[t]hrough its Fourth Amendment ruling, *Gerstein* does ensure that there will be at least the neutral screening that comes with a [judicial] ex parte determination of probable cause in all cases in which defendants are subjected to a 'significant restraint' on their liberty." 4 Criminal Procedure § 14.2(a).

Four circuits have held that a post-warrantless-arrest probable cause determination outside of the arrestee's presence complied with the Fourth Amendment.

The Seventh Circuit so held in *Blake v. Katter*, 693 F.2d 677, 681 (7th Cir. 1982), *abrogated on unrelated grounds by Wilson v. Garcia*, 471 U.S. 261, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985). On the day after Blake was arrested without a warrant, "[t]he court made a finding of probable cause, issued an arrest warrant and fixed bond" even though Blake was not present. *Id.* The Seventh Circuit held that the probable cause determination occurred within a reasonable time of his arrest and that it was sufficient that a judicial officer made it without an adversary hearing. *Id.* Blake's Fourth Amendment rights were not violated, according to the Seventh Circuit. Similarly, the Seventh Circuit

later held that an arrestee's rights were not violated when he was unable to attend a probable-cause hearing due to his hospitalization. *Garcia v. City of Chicago, Ill.*, 24 F.3d 966, 969 (7th Cir. 1994). The court concluded that the Fourth Amendment does not require such hearings to be adversarial in nature, explaining that the Fourth Amendment, which allows the issuance of warrants in the absence of arrestees, does not expand in scope for probable cause determinations that take place after arrests. *Id. But see Lopez v. City of Chicago, Ill.*, 464 F.3d 711, 718 (7th Cir. 2006) ("whether the arresting officer opts to obtain a warrant in advance or present a person arrested without a warrant for a prompt after-the-fact *Gerstein* hearing, the Fourth Amendment requires a *judicial* determination of probable cause").

The Fourth Circuit has also held that there is no Fourth Amendment right to a face-to-face appearance before a judge in a post-arrest probable cause determination. *King v. Jones*, 824 F.2d 324, 327 (4th Cir. 1987). A probable cause determination after arrest fulfills the same function as a probable cause determination for a warrant. *Id.* Someone arrested with a warrant had no opportunity to appear before the issuing judicial officer, and so "[t]here is likewise no reason to require such an appearance at the post-arrest probable cause determination." *Id.*

The Ninth Circuit held likewise in *Jones v. City of Santa Monica*, 382 F.3d 1052, 1055 (9th Cir. 2004). Although the city's procedure did not provide for arrestees to personally appear at post-arrest probable cause determinations, the Ninth Circuit held that the Constitution does not require a personal appearance. *Id.* The court explained that *Gerstein*'s statement that states may choose to incorporate a probable cause determination into a proceeding involving a personal appearance was a suggestion, not a constitutional requirement. *Id.* And *Gerstein* emphasized the standard for a probable cause determination post-arrest is the same as that for arrest. *Id.* at 1056. Thus, an arrestee

has no right to appear at a probable cause determination after a warrantless arrest – just as a suspect has no right to appear at a probable cause determination for an arrest warrant. *Id.*

Finally, the Tenth Circuit affirmed dismissal where a plaintiff claimed that a judge made a probable cause determination after the plaintiff was taken into custody, but before he appeared before the judge. *Strepka v. Miller*, 28 F. App'x 823, *828 (10th Cir. 2001). The Tenth Circuit affirmed the dismissal of the complaint for failure to state a claim, noting that a probable cause "determination can be made ex parte, without the presence of the arrestee." *Id.*

These cases are persuasive. Guided by *Gerstein* and the Seventh, Fourth, Ninth, and Tenth Circuits, the Court concludes that the Fourth Amendment does not require a probable cause determination following a warrantless arrest to be in the arrestee's presence.

Turning to the facts here, Green was arrested without a warrant on Friday, June 28, 2013, in the evening. On the next day, a judge found probable cause and issued an arrest warrant. *See* Document #99 at 3. This probable cause determination was made within forty-eight hours of Green's arrest. It was not delayed unreasonably. That Green was not present for this probable cause determination did not violate his constitutional rights.

## CONCLUSION

Green's motion for summary judgment is DENIED. Document #94. The City's motion for summary judgment is GRANTED. Document #83.

IT IS SO ORDERED this _18th_ day of December, 2018.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

# APPENDIX

# ARKANSAS CODE
## OF 1987
# ANNOTATED



## VOLUME 15

### TITLE 16: PRACTICE, PROCEDURE, AND COURTS (CHAPTERS 55-89)

*Prepared by the Editorial Staff of the Publisher*

Under the Direction and Supervision of the
ARKANSAS CODE REVISION COMMISSION
William S. Arnold, *Chairman*
Douglas O. Smith, Jr.
William H. Sutton
J. W. (Jake) Looney, *Dean, University of Arkansas,
Fayetteville, School of Law*
Lawrence H. Averill, Jr., *Dean, University of Arkansas
at Little Rock, School of Law*
Steve Clark, *Attorney General*

*Ex Officio*
Senator Mike Beebe
Representative J. L. (Jim) Shaver, Jr.

THE MICHIE COMPANY
*Law Publishers*
CHARLOTTESVILLE, VIRGINIA
1987

## RESEARCH REFERENCES

ALR. Intoxication as ground for police postponing arrestee's appearance before magistrate. 3 ALR 4th 1057.

Am. Jur. 21 Am. Jur. 2d, Crim. L., § 411 et seq.

Ark. L. Notes. Malone, The Availability of a First Appearance and Preliminary Hearing, 1983 Ark. L. Notes 41.

C.J.S. 22 C.J.S., Crim. L., § 331 et seq.

---

## 16-85-201. Proceeding when no warrant issued.

(a) Where an arrest is made without a warrant, whether by a peace officer or private person, the defendant shall be forthwith taken before the most convenient magistrate of the county in which the arrest is made, and the grounds on which the arrest was made shall be stated to the magistrate.

(b)(1) If the offense for which the arrest was made is charged to have been committed in a different county from that in which the arrest was made, and the magistrate believes, from the statements made to him on oath, that there are sufficient grounds for an examination, he shall, by his written order, commit the defendant to a peace officer, to be conveyed by him before a magistrate of the county in which the offense is charged to have been committed.

(2) If the offense is a misdemeanor only, the defendant may give bail before the magistrate for appearing before a court having jurisdiction to try the offense, on a day to be fixed by the magistrate.

(3) The magistrate taking bail, as provided in subsection (b) of this section, shall transmit by mail the bail bond, to the officer before whom, or the clerk of the court in which, the defendant is bound to appear.

(c)(1) Where the arrest is made in the county in which the offense is charged to have been committed, the magistrate before whom the defendant is taken, shall forthwith proceed to an examination of the charge.

(2) If the offense charged is a felony, the magistrate shall commit, hold to bail, or discharge the defendant, or, if he has jurisdiction to hear and finally try the charge, the magistrate shall proceed to final determination and judgment therein.

History. Crim. Code, §§ 43-45; C. & M. Dig., §§ 2913-2915; Pope's Dig., §§ 3729-3731; A.S.A. 1947, §§ 43-601 — 43-603.

Cross References. Nature of first appearance, ARCrP 8.3.

Prompt first appearance, ARCrP 8.1.

## CASE NOTES

### ANALYSIS

Construction.
Absence of counsel.
Authority of magistrate.
Confession.

Immediate appearance before magistrate.
Preservation of testimony.
Waiver.

**Construction.**
The procedure for a preliminary exami-

which a transcript can be admitted at trial under URE 804, and there can be no preservation of the testimony for trial under § 16-85-210 where there is no indication that the state gave notice of its intention to do so in order to comply with that section. Scott v. State, 272 Ark. 88, 612 S.W.2d 110 (1981).

**Waiver.**

Where defendant was placed on trial on a plea of not guilty without objection he waived his right to object to the fact that he was not arraigned. Clubb v. State, 230 Ark. 688, 326 S.W.2d 816 (1959).

Trial court did not commit reversible error in refusing to instruct the jury that one arrested without a warrant must be forthwith taken before a magistrate for the fixing of bail or discharge, where defendant had been admitted to bail and where defendant went to trial on a plea of not guilty without raising any question about pretrial procedures. Dillard v. State, 260 Ark. 743, 543 S.W.2d 925 (1976).

**Cited:** Young v. State, 230 Ark. 737, 324 S.W.2d 524 (1959); Mitchell v. Stephens, 353 F.2d 129 (8th Cir. 1965), cert. denied, 384 U.S. 1019, 86 S. Ct. 1966, 16 L. Ed. 2d 1042 (1966); Patrick v. State, 255 Ark. 10, 498 S.W.2d 337 (1973); Orr v. State, 256 Ark. 547, 508 S.W.2d 731 (1974); Bailey v. State, 284 Ark. 379, 682 S.W.2d 734 (1985).

## 16-85-202. Authority of magistrate.

A magistrate of the county in which a public offense has been committed is authorized to examine the charge and commit to jail or hold to bail the person charged with its commission.

**History.** Crim. Code, § 46; C. & M. Dig., § 2917; Pope's Dig., § 3733; A.S.A. 1947, § 43-604.

### CASE NOTES

**Commitment by Coroner.**

One committed for murder by a coroner has no right to demand an examination by a magistrate. Ex parte Anderson, 55 Ark. 527, 18 S.W. 856 (1892).

## 16-85-203. Procedure generally.

(a) When a person who has been arrested shall be brought, or in pursuance of a bail bond shall come, before a magistrate of the county in which the offense is charged to have been committed, the charge shall be forthwith examined. Reasonable time, however, must be allowed for procuring counsel and the attendance of witnesses.

(b) The magistrate, before commencing the examination, shall state the charge and inquire of the defendant whether he desires the aid of counsel and shall allow a reasonable opportunity for procuring it.

**History.** Crim. Code, § 47; C. & M. Dig., § 2918; Pope's Dig., § 3734; A.S.A. 1947, § 43-605.

**Cross References.** Appointment of counsel, ARCrP 8.2.

*Act 1994 a 2005*

SECTION *502.* Arkansas Code Title 16, Chapter 85, Subchapter 2 is repealed.

16–85–201. Proceeding when no warrant issued.

(a) Where an arrest is made without a warrant, whether by a peace officer or private person, the defendant shall be forthwith taken before the most convenient magistrate of the county in which the arrest is made, and the grounds on which the arrest was made shall be stated to the magistrate.

(b)(1) If the offense for which the arrest was made is charged to have been committed in a different county from that in which the arrest was made, and the magistrate believes, from the statements made to him on oath, that there are sufficient grounds for an examination, he shall, by his written order, commit the defendant to a peace officer, to be conveyed by him before a magistrate of the county in which the offense is charged to have been committed.

(2) If the offense is a misdemeanor only, the defendant may give bail before the magistrate for appearing before a court having jurisdiction to try the offense, on a day to be fixed by the magistrate.

(3) The magistrate taking bail, as provided in subsection (b) of this section, shall transmit by mail the bail bond, to the officer before whom, or the clerk of the court in which, the defendant is bound to appear.

(c)(1) Where the arrest is made in the county in which the offense is charged to have been committed, the magistrate before whom the defendant is taken, shall forthwith proceed to an examination of the charge.

(2) If the offense charged is a felony, the magistrate shall commit, hold to bail, or discharge the defendant, or, if he has jurisdiction to hear and finally try the charge, the magistrate shall proceed to final determination and judgment therein.

16–85–202. Authority of magistrate.

A magistrate of the county in which a public offense has been committed is authorized to examine the charge and commit to jail or hold to bail the person charged with its commission.

16–85–203. Procedure generally.

(a) When a person who has been arrested shall be brought, or in pursuance of a bail bond shall come, before a magistrate of the county in which the offense is charged to have been committed, the charge shall be forthwith examined. Reasonable time, however, must be allowed for procuring counsel and the attendance of witnesses.

(b) The magistrate, before commencing the examination, shall state the charge and inquire of the defendant whether he desires the aid of counsel and shall allow a reasonable opportunity for procuring it.